Deitrich BOSTELMAN, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 06SC70.

Supreme Court of Colorado,
En Banc.

June 25, 2007.

As Modified on Denial of Rehearing
July 30, 2007.*

* Justice Eid does not participate.

Jonathan D. Reppucci, LLC, Jonathan D. Reppucci, Denver, CO, Attorney for Petitioner.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, CO, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

■ We granted certiorari in *People v. Bostelman,* 141 P.3d 891 (Colo.App.2005) to determine whether the direct filing statute [1] authorizes the prosecution to file charges in district court based on the juvenile's age at the time the delinquent act is charged, rather than the juvenile's age when the delinquent act occurred.[2] Petitioner, Deitrich Bostel-

---

1. The direct filing statute authorizes the prosecution to charge a juvenile as an adult by filing certain enumerated charges directly in district court. *See Flakes v. People,* 153 P.3d 427, 429

(Colo.2007) (providing a general explanation of the direct filing statute).

2. The issue we granted certiorari on is:

man, was charged by direct filing in district court with second degree burglary and theft.[3] Bostelman was thirteen years old when he committed the delinquent acts and fourteen years old when the prosecution charged him in district court with a delinquent act that constitutes a felony. Relying on the plain language of the direct filing statute, section 19–2–517(1)(a)(IV), C.R.S. (2005),[4] the district court and the court of appeals concluded that the prosecution had the discretionary authority to charge Bostelman as an adult because he was fourteen when the charges were filed. We reverse the judgment of the court of appeals.

We conclude that the plain language of the direct filing statute, as it existed when Bostelman was charged, was ambiguous as to whether a juvenile must be fourteen when the charged delinquent act occurred or when the prosecution filed the charge. Given the stated purpose of the juvenile justice system and the legislature's intent in enacting the Children's Code, we hold that a juvenile must have been fourteen years old at the time the delinquent act occurred in order for the prosecution to file directly. Because Bostelman was thirteen when the alleged burglary and thefts took place, the prosecution did not have authority under the direct filing statute to charge him as an adult in district court for burglary, and the district court did not have authority to sentence him as an adult for that offense. Accordingly, we reverse the judgment of the court of appeals and remand this case to that court with directions to return it to the district court for further proceedings consistent with this opinion.

> Whether the court of appeals erred in construing jurisdiction under the direct filing statute, section 19–2–517(1)(a)(IV), C.R.S. (2005), to turn on the juvenile's age at the time when prosecution is initiated rather than the juvenile's age at the time the alleged crime occurred.

3. The theft charges against Bostelman were later dropped pursuant to a plea agreement.

4. The General Assembly revised section 19–2–517(1)(a)(IV) in 2006. Because the prosecution filed charges directly against Bostelman prior to the 2006 version, we cite to the 2005 version of the direct filing statute.

## I.

### Facts & Procedural History

On December 22, 1998, the prosecution charged Bostelman with sexual assault as a crime of violence by direct filing in the Mesa County District Court based on an alleged assault that occurred on December 17.[5] Bostelman was fourteen years old when the alleged sexual assault occurred.[6] Section 19–2–517(1)(a)(II)(A), C.R.S. (2005), allowed the prosecution to directly file charges against Bostelman for the sexual assault charge because he was fourteen when the alleged act occurred and the alleged act constitutes a felony enumerated as a crime of violence in section 18–1.3–406(2)(II)(a)(E), C.R.S. (1998).

On February 2, 1999, the prosecution charged Bostelman with second degree burglary and theft,[7] also by direct filing in the Mesa County District Court. The burglaries and thefts were committed between October 18 and November 20, 1998 when Bostelman was thirteen years old. The sexual assault charge became the prosecution's predicate for direct filing the burglary and theft charges in district court, pursuant to section 19–2–517(a)(IV), C.R.S. (2005). In addition, on February 5, 1999, the prosecution charged Bostelman with robbery[8] by direct filing in the district court based on an incident that occurred on December 1, 1998, when Bostelman was fourteen.

Bostelman entered into a plea agreement that consolidated the burglary and theft charges with the pending robbery and sexual assault charges. The agreement provided that the sexual assault charge would be

5. Bostelman was charged with sexual assault as a crime of violence pursuant to section 18–3–402(1)(a), (4)(a)(I), C.R.S. (1998). We cite to the statutory provisions in effect when Bostelman was charged with the alleged crimes.

6. Bostelman's birthday is November 28, 1984.

7. Bostelman was charged with three counts of burglary pursuant to section 18–4–203(1), (2)(a), C.R.S. (1999) and three counts of theft pursuant to section 18–4–401(1)(a), C.R.S. (1999).

8. Bostelman was charged with robbery pursuant to section 18–4–301, C.R.S. (1999).

treated as a juvenile case. As part of the plea agreement, the theft and robbery charges were dismissed, Bostelman was treated as a youthful offender for the sexual assault charge, and he was treated as an adult for the remaining burglary charge.

The district court sentenced Bostelman to the Department of Corrections for twelve years on the burglary charge. The court suspended the twelve year sentence on the condition that Bostelman successfully complete a six year sentence in the Youth Offender System.[9] On the sexual assault charge, the court sentenced Bostelman to an indeterminate sentence (up to five years) in the Department of Youth Corrections to run consecutively with the burglary sentence. All the other charges against Bostelman were dismissed pursuant to the plea agreement.

Bostelman successfully completed his five year sentence for the sexual assault and was transferred to the Youth Offender System for the six year suspended burglary sentence. However, based on its finding that Bostelman failed to successfully comply with the terms of his Youth Offender sentence, the district court revoked that sentence and imposed the twelve year suspended Department of Corrections sentence. Subsequently, Bostelman filed a Crim. P. 35(c) motion in which he contended that the district court lacked authority to sentence him as an adult offender for the burglary charge because he was under the age of fourteen when that act was committed.

The district court rejected Bostelman's argument and concluded that "the plain language of the [direct filing] statute states that a juvenile may be *charged* by the direct filing of an information in the district court or by indictment when the juvenile is fourteen years of age or older." The court also stated that, by pleading guilty to the burglary charge, Bostelman conceded to the court's authority to treat him as an adult.

The court of appeals agreed with the district court's construction of the statute and affirmed denial of Bostelman's Crim. P. 35(c) motion. Upon Bostelman's petition, we granted certiorari to determine whether the direct filing statute required a juvenile to be fourteen at the time of the delinquent act or at the time the information is filed.

First, we analyze the plain language of the direct filing statute. Because the statutory language creates an ambiguity regarding the juvenile's age, we next turn to the legislature's intent in enacting the juvenile justice system provisions of the Children's Code and the overarching objectives of that system. For comparison, we then consider the goals and objectives of the adult justice system. We conclude that the child's age at the time of the delinquent act determines whether the prosecution may file directly in district court.

## II.

We conclude that the plain language of the direct filing statute, as it existed when Bostelman was charged, was ambiguous as to whether a juvenile must be fourteen when the charged delinquent act occurred or when the prosecution filed the charge. Given the stated purpose of the juvenile justice system and the legislature's intent in enacting the Children's Code, we hold that a juvenile must have been fourteen years old at the time the delinquent act occurred in order for the prosecution to file directly. Because Bostelman was thirteen when the alleged burglary and thefts took place, the prosecution did not have authority under the direct filing statute to charge him as an adult in district court for burglary, and the district court did not have authority to sentence him as an adult for that offense.

### A.

### Standard of Review

Statutory interpretation is a question of law we review de novo. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006). Our primary task when construing a statute is to give effect to the General Assembly's intent. *Id.; see also*

---

9. *See generally* § 19-2-907, C.R.S. (2006) (detailing the various facilities available to a trial court when imposing a youth offender sentence).

*C.S. v. People,* 83 P.3d 627, 634 (Colo.2004). To determine the legislature's intent, we first look to the plain language of the statute. *C.S.,* 83 P.3d at 634. When reviewing the language of a statute, we read words and phrases in context and construe them according to their common usage. *Klinger,* 130 P.3d at 1031 (*citing People v. Yascavage,* 101 P.3d 1090, 1093 (Colo.2004)). If the statutory language is clear and unambiguous, we do not engage in further statutory analysis. *Klinger,* 130 P.3d at 1031. However, where the language is ambiguous we may consider other aids to statutory construction, such as the consequences of a given construction, the end to be achieved by the statute, and legislative history. *Id.*

 Generally, we construe the provisions of the Children's Code liberally in order to accomplish the purpose of the Code and to effectuate the legislature's intent. *C.S.,* 83 P.3d at 635. We must avoid a technical reading that would disregard the child's best interests and the legislature's intent. *See id.*

### B.

### Direct Filing Statute

As applicable to this case, the legislature provided in the direct filing statute that:

(1)(a) A juvenile may be charged by direct filing of an information in the district court or by indictment *only when:* (IV) The juvenile is *fourteen years of age* or older, has allegedly *committed a delinquent act that constitutes a felony,* and has previously been subject to proceedings in district court as a result of a direct filing pursuant to this section or a transfer pursuant to section 19–2–518; except that, if a juvenile is found not guilty in the district court of the prior felony or any lesser included offense, the subsequent charge shall be remanded back to the juvenile court.

§ 19–2–517(1)(a)(IV), C.R.S. (2005); 2003 Colo. Sess. Laws ch. 44, § 6, 649 (emphasis added).

 The plain language of the direct filing statute does not expressly state whether a juvenile must be fourteen when the charges are filed or when the delinquent act

occurred. Other provisions of the Children's Code addressing juvenile sentencing expressly require that a juvenile be a certain age when the delinquent act was committed. *See, e.g.,* § 19–2–517(3)(a)(II)(D), C.R.S. (2006) (requiring a juvenile to be sixteen years old when the alleged crime occurred); § 19–2–518(4)(b)(XIII), C.R.S. (2006) (same). In criminal law, the general rule is that the date of the offense governs the applicable statute to be applied in charging the offense. *See People v. McKinney,* 99 P.3d 1038, 1042 (Colo.2004) (explaining that the limitations period for most crimes begins to run when the commission of the crime takes place); *People v. Woodward,* 11 P.3d 1090, 1093 (Colo.2000) (concluding that the statute in effect when the illegal conduct occurred controls); *People v. Marlott,* 191 Colo. 304, 309, 552 P.2d 491, 494 (1976) (requiring a defendant to be sentenced under the criminal statute in effect at the time of the commission of the crime).

Several divisions of the court of appeals have interpreted different provisions of the direct filing statute to turn on a juvenile's age at the time of the delinquent act. *See People in Interest of M.C.,* 750 P.2d 69, 69 (Colo.App.1987) ("The age at which the acts were committed is the determinative factor, not the age at which disposition was imposed."); *People v. Zamora,* 13 P.3d 813, 815 (Colo.App.2000) (noting that the prosecution properly filed directly charges against the defendant because he was over fourteen years old on the date of the offenses).

On the other hand, in the context of determining whether the district court retained jurisdiction even though the juvenile was convicted of a lesser included offense in juvenile court, a division of the court of appeals held that the plain language of the direct filing statute demonstrates that the legislature intended the date of the information, rather than the date of the subsequent conviction, to trigger the district court's jurisdiction. *People v. Davenport,* 43 Colo.App. 41, 43, 602 P.2d 871, 872 (1979). The court of appeals has held that the two-year period for filing subsequent criminal charges against a juvenile runs from the first date of the delinquency adjudication to the date that the sec-

ond offense is actually committed. *People v. Trujillo,* 983 P.2d 124, 126 (Colo.App.1999).

We conclude that the plain language of the direct filing statute is ambiguous. It could be construed to either require the juvenile to be fourteen at the time of filing or fourteen at the time of the delinquent act. The clause of the statute applicable in this case raises an ambiguity because it mentions direct filing and the age of fourteen, followed immediately by reference to the delinquent act to be charged against the juvenile, without specifying whether the age of fourteen applies to the delinquent act or the filing of the charge:

> A juvenile may be charged by direct filing of an information in the district court or by indictment *only when:* (IV) The juvenile is *fourteen years of age* or older, has allegedly *committed a delinquent act that constitutes a felony* . . . .

§ 19–2–517(1)(a)(IV) (emphasis added).

In construing this statutory provision, we now turn to the legislative purpose and intent behind enacting the direct filing statute as a part of the Children's Code.

## C.

### The Juvenile Justice System

The General Assembly enacted the juvenile justice provisions of the Children's Code to "protect, restore, and improve the public safety by creating a system of juvenile justice that will appropriately sanction juveniles who violate the law and, in certain cases, will also provide the opportunity to bring together affected victims, community, and juvenile offenders for restorative purposes." § 19–2–102(1), C.R.S. (2006). To achieve this purpose, the legislature has directed that the juvenile justice system consider the "best interests of the juvenile, the victim, and the community in providing appropriate treatment to reduce the rate of recidivism . . . and to assist the juvenile in becoming a productive member of society." *Id.*

■ The juvenile justice system is primarily designed to provide guidance, rehabilitation, and restoration for the juvenile and the protection of society, rather than adjudicating criminal conduct and sanctioning criminal responsibility, guilt, and punishment. *Kent v. United States,* 383 U.S. 541, 554–55, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (noting that the juvenile justice system is "rooted in social welfare philosophy rather than in the corpus juris"). *See S.G.W. v. People,* 752 P.2d 86, 88 (Colo.1988) (stating that the Children's Code should be liberally construed in order to serve the best interests of the juveniles and society); *see also People v. J.J.H.,* 17 P.3d 159, 163–64 (Colo.2001) (discussing the overriding purposes of the juvenile justice system in the context of the Children's Code).

■ In keeping with the stated purpose of the Children's Code and the juvenile system, juvenile delinquency proceedings are not criminal prosecutions; instead, they are civil in nature. *S.G.W.,* 752 P.2d at 88; *see also Kent,* 383 U.S. at 554–55, 86 S.Ct. 1045 (stating that juvenile delinquency proceedings are civil rather than criminal and concluding that the state acts as "parens patriae rather than prosecuting attorney and judge").

■ Enacted as a modification to the juvenile justice system provisions of the Children's Code, the direct filing statute provides the prosecution with discretion to charge a juvenile as an adult in district court, if certain enumerated criteria are satisfied.[10] *People v. Thorpe,* 641 P.2d 935, 937–38 (Colo. 1982). The direct filing statute exposes juveniles to adult criminal prosecution based on the juvenile's age and the severity of the delinquent act, which must be a felony if committed by an adult. *See Flakes v. People,* 153 P.3d 427, 431–34 (Colo.2007) (providing a detailed historical overview of the Children's Code and the direct filing statute).

Allowing children to be exposed to adult punishment in some circumstances is for the purpose of deterring them from engaging in criminal acts when they are adults. As stated in the Children's Code, "it is in the best

---

**10.** As relevant here, the direct filing statute allows the prosecution to charge a juvenile as an adult if the alleged delinquent act constitutes a felony and the juvenile has previously been subject to criminal charges in district court. § 19–2–517(1)(a)(IV).

interest of a child to have a limited exposure to an adult penal institution, regardless of the offense he has committed, in order to give him some indication of what he will face should he violate the law after he has become an adult." *People in the Interest of M.C.,* 750 P.2d 69, 71 (Colo.App.1987); *see People v. Dalton,* 70 P.3d 517, 522 (Colo.App.2002); *see also People v. Ball,* 22 P.3d 574, 576 (Colo.App.2001) (noting that the legislature's intent in enacting the direct filing statute "was to carefully define those cases in which a juvenile would be tried as an adult"). Because this exposure to the adult punishment system can have severe consequences and contrasts remarkably from the predominantly civil remedial goal of the Children's Code, the legislature has limited the prosecution's ability to file directly a charge against a child in district court.

### D.

### Adult Criminal Justice System

■ In contrast to the juvenile justice system's primary goal of guidance, rehabilitation, and restoration enabling a youthful offender to become a productive member of society, the adult justice system focuses on punishment, deterrence, and retribution as explicit goals. *See* Hillary J. Massey, *Disposing of Children: The Eighth Amendment and Juvenile Life Without Parole After Roper,* 47 B.C.L.Rev. 1083, 1086 (Sept.2006). The legislative purposes underlying Colorado's adult criminal code with respect to sentencing are to "punish a convicted offender by assuring the imposition of a sentence he deserves in relation to the seriousness of this offense ... [t]o prevent crime and promote respect for the law by providing an effective deterrent to others likely to commit similar offenses." § 18–1–102.5(1)(a), (c), C.R.S. (2006); *People v. Reed,* 43 P.3d 644, 646–47

(Colo.App.2001). In sum, adult sentencing requires the courts to place deterrence, retribution, and punishment into the sentence determination. *People v. Watkins,* 200 Colo. 163, 166, 613 P.2d 633, 636 (1980); *People v. Martinez,* 628 P.2d 608, 611 (Colo.1981).

■ When comparing the legislature's establishment of a juvenile justice system, which differs fundamentally from the adult justice system, our conclusion is that the legislature meant for exposure to the criminal punishment system to be applicable for a delinquent act constituting a felony only when the person is mature enough, i.e., fourteen, to consider the penal consequences of committing the delinquent act.[11]

### E.

### Application to this Case

Given the juvenile justice system's objectives, we conclude that the legislature intended the direct filing statute to apply only to juveniles who committed delinquent acts constituting a felony on or after the age of fourteen. A juvenile's age at the time the delinquent act occurs thereby determines whether the prosecution can file directly charges in district court.

Here, it is undisputed that Bostelman committed the burglary when he was thirteen years old. The prosecution filed directly the burglary charge against Bostelman in district court after he turned fourteen.

Shifting the focus to the prosecution's timing of filing charges, rather than the age of the child at the time of the delinquent act, encourages prosecutorial delay in bringing charges and raises the very real possibility that children who commit the same act will be treated substantially differently, depend-

---

11. In contrast to prosecutorial authority to file directly a charge, the transfer statute in effect at the time of Bostelman's delinquent act allowed, upon a judicial determination by the juvenile court, twelve or thirteen year old children to be prosecuted for a class 1 or class 2 felony or a crime of violence. § 19–2–518, C.R.S. (2005). The transfer statute allows the juvenile court to make individualized decisions regarding whether transfer to district court is appropriate in certain, limited circumstances. § 19–2–518(1)(a)(I)(A).

The prosecution was not permitted to file directly charges against twelve or thirteen year olds in district court, instead the juvenile court was vested with the sole discretion to determine whether transfer would be appropriate. *People v. Lee,* 989 P.2d 777, 780 (Colo.App.1999) (when determining whether transfer is appropriate "the juvenile court must determine whether it would be contrary to the best interests of the juvenile or the public to retain jurisdiction over the child").

ing on which prosecutor brings the charge. The legislature intended neither of these possibilities.

Considering the contrasting purposes of the juvenile and adult justice systems, and the legislature's intent to afford juveniles the opportunity for rehabilitation before they reach adulthood, the age at which a juvenile commits the delinquent act is the determinative statutory factor in the legislature's grant of discretionary authority to the prosecution for direct filing in district court.

Our decision is supported by an act of the General Assembly in 2006. To further its purpose of rehabilitating and affording juveniles protection against exposure to adult sentencing until a specified age, the General Assembly has now explicitly provided that the direct filing statute authorizes prosecutorial discretion to file directly only if "[t]he juvenile is fourteen years of age or older *at the time of the commission of the alleged offense.*" § 19–2–517(1)(a)(IV) (emphasis added).[12]

We conclude that section 19–2–517(1)(a)(IV), as it existed when Bostelman was charged, was ambiguous regarding whether a juvenile must be fourteen at the time of the delinquent act or the time of direct filing. After examining the General Assembly's purpose and intent underlying the juvenile justice system, as compared to the adult system and the possible consequences of alternate interpretations of the direct filing statute, we hold that section 19–2–517(1)(a)(IV) authorized the prosecution to file directly charges in district court only if the juvenile was fourteen years old at the time the alleged delinquent act occurred, and the other criteria of the direct filing statute were met.

Because Bostelman pled guilty in district court to the burglary charge, the prosecution urges us to conclude that the district court had subject matter jurisdiction and that Bostelman waived any jurisdictional deficiencies by pleading guilty. However, in this opinion, we do not engage in evaluating the plea bargain in this case or the potential consequences of our decision upon that bargain. That is for the parties and the district court to address on remand. Our statutory construction decision was not available to either the district court or the court of appeals, and neither court's decision addresses the plea bargain arguments the prosecution has made in its briefs to us.

■ Contrary to the defense argument and prosecution counter-argument before us, we do not find it necessary to engage in a subject matter jurisdictional analysis to decide the issue presently on appeal. For a sentence to be legal, a court must impose it according to statutory authority. *Flakes*, 153 P.3d at 436.

The General Assembly has the power to define both crimes and sentences for their punishment. It has made specific modifications to the Children's Code that subject minors, under certain circumstances, to "the horrors of subjecting children to both the process and consequences of prosecution in an adult system." *Flakes*, 153 P.3d at 432. None of these modifications allowed the prosecution to file directly the burglary charge against Bostelman in district court. Under the applicable statutes at the time, the charged burglary was not a crime but, rather, a delinquent act for which only a juvenile sentence could have been imposed. The district court lacked authority to sentence Bostelman to the Department of Corrections.

To honor the General Assembly's intent, the Department of Corrections sentence Bostelman received for burglary must be vacated.[13]

---

**12.** The General Assembly also amended the transfer statute in 2006 to require that a juvenile be: "Fourteen years of age or older *at the time of the commission of the alleged offense* ...." § 19–2–518(1)(a)(I)(B), C.R.S. (2006) (emphasis added).

**13.** In a footnote in its answer brief, the prosecution stated:

> It should be noted that if the defendant were to have his conviction in 99CR160 [burglary case] vacated, the People would then have the option of refiling all of the original charges against him, including those that were dismissed pursuant to the plea agreement, and could seek any authorized penalty.

This issue is not before us and we do not address it.

### III.

Accordingly, we reverse the judgment of the court of appeals, and we remand this case to that court with directions to return this case to the district court for further proceedings consistent with this opinion.

Justice COATS dissents.

Justice EID does not participate.

Justice COATS, dissenting.

I not only consider the majority's interpretation of the direct file statute wholly unjustified, but I consider its order to vacate the defendant's burglary sentence unsupported by even its own interpretation. Furthermore, I consider it singularly unhelpful to either the parties or the trial court to order the defendant's burglary sentence vacated, as the majority has done, without also deciding the effect of that order on the defendant's entire guilty plea, or for that matter, even its effect on the defendant's burglary conviction. I therefore respectfully dissent and briefly register my objections.

The majority holds that section 19–2–517(1)(a)(IV), C.R.S. (2005), which permits a juvenile to be charged by direct filing in the district court "when: ... The juvenile is fourteen years of age or older," must be understood to actually mean that charging a juvenile by direct filing is permissible *only* if the juvenile "was" already fourteen years of age or older, at the earlier point in time when he actually committed the offense for which he is being charged. In reaching this conclusion, the majority finds that the "plain language" of the statute fails to expressly state whether it means that the juvenile must be fourteen when the delinquent act occurred or only when the charges are filed. It therefore finds the "plain language" to be ambiguous, permitting it to rely on its own assessment of the legislature's intent, gleaned from its general statement of purpose for having created a separate juvenile justice system in the first instance. *Cf. Williams v. Kunau,* 147 P.3d 33 (Colo.2006); *id.* at 40 (Coats, J., dissenting) (lamenting the practice of ignoring specific statutory language in favor of implementing statutes according to the court's understanding of how best to achieve broadly articulated legislative policies).

The language of the statute itself, however, could not more clearly relate the statute's only age requirement to the time of filing. For purposes of direct filing, the statute makes no mention whatsoever of a limitation on the juvenile's age at the time of committing his offense, referring instead only to the juvenile's age in the present tense with reference to the requirements of direct filing. Having expressly limited direct filing to a time "when" the juvenile "is" at least fourteen years old, no further clarification was called for. The statutory language existing when the juvenile both committed and was charged with his crimes was simply not susceptible of the interpretation given it by the majority.

Nor does the general assembly's 2006 action, *see* ch. 122, sec. 6, § 9–2–15, 2006 Colo. Sess. Laws 422, 422–23, amending the statute to say precisely what the majority now decides it meant all along, indicate otherwise. Quite the contrary, a statutory amendment is normally understood to indicate an intent to change the statute. *See Charnes v. Lobato,* 743 P.2d 27, 30 (Colo.1987); *Douglas County Bd. of Equalization v. Fidelity Castle Pines,* 890 P.2d 119, 125 (Colo.1995). Assuming the interpretation of a statute could, under certain circumstances, be legitimately influenced by the wishes of a later legislative body, nothing in the 2006 amendment to the direct file statute suggests any insight into the intent of the 1987 enacting body or any desire merely to clarify it. *Cf. Frank M. Hall & Co. Inc. v. Newsom,* 125 P.3d 444, 451 (Colo. 2005).

Even if the majority's construction were plausible, however, its order to vacate the defendant's burglary sentence would still not find support in its own opinion. In submitting himself to the jurisdiction of the court by requesting the court to accept a favorable plea agreement, a defendant waives all objections he may have except those related to the effectiveness of his guilty plea or to a lack of power by the court, appearing on the face of the record, to enter judgment and sentence. *See Patton v. People,* 35 P.3d 124 (Colo.2001); *see also People v. McMurtry,* 122 P.3d 237

(Colo.2005). The defendant here does not allege the ineffectiveness or facial unconstitutionality of his plea, and the district court clearly had jurisdiction over prosecution of the class of offense to which he pled guilty. *Cf. Horton v. Suthers*, 43 P.3d 611, 615 (Colo. 2002) (subject-matter jurisdiction concerns court's authority to deal with class of cases in which it renders judgment).

While it seems clear to me that the court did not lack subject matter jurisdiction over the defendant's plea, it is even more clear to me that any lack of authority to try and sentence him as an adult, as the majority now finds, would have been waived by that plea, unless the court lacked subject matter jurisdiction to accept it. Since the majority declines to make that determination, its order to vacate the defendant's sentence to the department of corrections finds no support, even in its own opinion.

Finally, I am bothered by the majority's willingness to defeat what appears to be the central condition of a multiple-crime plea agreement—the only condition resulting in a prison sentence—without explaining its effect on the plea as a whole, including the dismissal of other felony charges, allegedly committed after the juvenile was fourteen; but I am completely baffled by the majority's order to vacate the defendant's adult sentence for burglary without also ordering his adult conviction for burglary vacated. Whatever its purpose in so narrowly tailoring its order, the effect can only be to freeze the parties and trial court in uncertainty. Even if the majority's self-imposed limitation were motivated solely by a desire to decide no more than necessary for resolution of the issue on appeal, I consider its explanation so obscure as to be unhelpful, if not actually misleading.

I therefore respectfully dissent.