The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 6, 2022

## 2022COA115

## No. 19CA1007, *People v. Dennel* — Children's Code — Juvenile Court — Delinquency — Transfers

In this appeal, a division of the court of appeals interprets a provision of the juvenile transfer statute contained in the Children's Code.

The defendant was charged in juvenile court with committing a delinquent act that if committed by an adult would constitute a class 2 felony.  On the date of the alleged offense, the defendant was fifteen years old and had no prior felony adjudications or convictions.  On the People's motion and after a contested hearing, the juvenile court waived its jurisdiction and transferred the defendant's case to district court for adult criminal proceedings.  Once the case was transferred to district court, the defendant pleaded guilty to a class 4 felony and was sentenced as an adult.

On appeal, the defendant contends that he wasn't statutorily eligible to have his case transferred from juvenile court to district court because he didn't have a prior felony adjudication. Relying on *People v. Nelson*, 2015 COA 123, ¶ 12, the defendant contends that, under section 19-2.5-802(1)(a)(I)(B), C.R.S. 2022, a child his age charged with a felony must have a previous delinquency adjudication for a felony before the juvenile court can transfer his case to district court. He argues that because he didn't have a prior felony adjudication, the juvenile court erred by transferring his case and the district court never acquired jurisdiction over him under the transfer statute.

Parting ways with the division in *Nelson*, this division of the court of appeals concludes that the plain meaning of the transfer statute doesn't condition transfer eligibility on a previous delinquency adjudication. Because the defendant was eligible for transfer and he doesn't otherwise challenge his transfer from juvenile court to district court, the division affirms the defendant's conviction and sentence.

COLORADO COURT OF APPEALS      **2022COA115**

Court of Appeals No. 19CA1007
Pueblo County District Court Nos. 17JD220 & 18CR2025
Honorable Deborah R. Eyler, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Johnny Joseph Dennel, Jr.,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE WELLING
J. Jones and Schutz, JJ., concur

Announced October 6, 2022

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Johnny Joseph Dennel, Jr., a juvenile, appeals the judgment of conviction entered by the district court after he pleaded guilty to manslaughter.

¶ 2     Dennel was charged in juvenile court with committing a delinquent act that if committed by an adult would constitute second degree murder, a class 2 felony. On the date of the alleged offense, Dennel was fifteen years old and had no prior felony adjudications or convictions. On the People's motion and after a contested hearing, the juvenile court waived its jurisdiction and transferred Dennel's case to district court for adult criminal proceedings. Once the case was transferred to district court, Dennel pleaded guilty to manslaughter, a class 4 felony, and was sentenced as an adult.

¶ 3     On appeal, Dennel contends that he wasn't statutorily eligible to have his case transferred from juvenile court to district court because he didn't have a prior felony adjudication. Relying on *People v. Nelson*, 2015 COA 123, ¶ 12, Dennel contends that, under section 19-2.5-802(1)(a)(I)(B), C.R.S. 2022, a child his age charged with a felony must have a previous delinquency adjudication for a felony before the juvenile court can transfer his case to district

1

court.  He argues that because he didn't have a prior felony adjudication, the juvenile court erred by transferring his case and the district court never acquired jurisdiction over him under the transfer statute.

¶ 4    Parting ways with the division in *Nelson*, we conclude that the plain meaning of the transfer statute doesn't condition transfer eligibility on a previous delinquency adjudication.  Because Dennel was eligible for transfer and he doesn't otherwise challenge his transfer from juvenile court to district court, we affirm the judgment.

## I.    Background

¶ 5    This case began when the People filed a petition in juvenile court alleging that Dennel had committed a delinquent act that constituted second degree murder, a class 2 felony, and that, at the time of the alleged delinquent act, Dennel was fifteen years old.  It's undisputed that when this case was filed, Dennel had no prior felony adjudications or convictions.

¶ 6    Seeking to charge Dennel as an adult, the People filed a motion requesting that the juvenile court waive its jurisdiction and transfer the case to district court pursuant to section 19-2.5-

802(1)(a)(I)(B). After a four-day transfer hearing, the juvenile court found probable cause that Dennel had committed the alleged delinquent act and that it was in the best interests of the community for the juvenile court to waive jurisdiction over Dennel. Thus, over Dennel's objection, the juvenile court transferred the case to district court.

¶ 7 Rather than standing trial on the second degree murder charge, Dennel agreed to plead guilty to manslaughter, a class 4 felony. The district court accepted Dennel's guilty plea and sentenced him to a suspended ten-year term in the custody of the Department of Corrections on the condition that he complete a five-year term in the Youthful Offender System.

## II. Dennel's Transfer Eligibility Under Section 19-2.5-802(1)(a)(I)(B)

¶ 8 On appeal, Dennel contends that, under the transfer statute, a juvenile court can't transfer a case against a fifteen-year-old unless the child has at least one prior felony adjudication or conviction. Because he hadn't previously been adjudicated or convicted of a felony, Dennel asserts that the district court didn't acquire

3

jurisdiction to accept his plea, enter a felony conviction against him, and impose sentence. We disagree.

¶ 9 We conclude that the transfer statute doesn't require that a juvenile have a prior felony adjudication before the court may transfer the juvenile's case to district court and, based on this interpretation, Dennel was eligible to have his case transferred to district court.

## A. Standard of Review

¶ 10 This case presents an issue of statutory interpretation, which we review de novo. *Bostelman v. People*, 162 P.3d 686, 689 (Colo. 2007). Our primary task when construing a statute is to give effect to the General Assembly's intent. *Id.* (citing *Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006)). In determining the legislature's intent, we look first to the plain language of the statute. *Id.* at 690 (citing *C.S. v. People in Interest of I.S.*, 83 P.3d 627, 634 (Colo. 2004)). When reviewing a statute's plain language, we read words and phrases in context and construe them according to their common usage, *id.* (citing *Klinger*, 130 P.3d at 1031), and in a manner that is harmonious with other provisions, *People v. Ross*, 2021 CO 9, ¶ 34 ("[W]e are duty-bound

4

to interpret . . . statutory provisions harmoniously — that is, in a manner that gives consistent and sensible effect to all their parts and avoids rendering any words or phrases meaningless.").

¶ 11    If the statutory language is clear and unambiguous, we won't engage in further statutory analysis. *Bostelman,* 162 P.3d at 689. Indeed, it is only when a statute is ambiguous that we may employ other tools of statutory construction, such as considering the consequences of a given construction, the end to be achieved by the statute, and legislative history. *Id.*

## B.    Statutory Interpretation

¶ 12    The Children's Code creates "a system of juvenile justice that will appropriately sanction juveniles who violate the law." § 19-2.5-101(1)(a), C.R.S. 2022. Subject to certain exceptions, the juvenile court has "exclusive original jurisdiction" over cases involving juveniles. § 19-2.5-103(1), C.R.S. 2022.

¶ 13    The transfer statute is one such exception. The transfer statute permits the People to request that a juvenile court waive its jurisdiction and transfer a case to district court when — and only when — a petition contains certain allegations. Specifically, the transfer statute provides, in pertinent part, as follows:

5

(1)(a) The juvenile court may enter an order certifying a juvenile to be held for criminal proceedings in the district court if:

(I) *A petition filed in juvenile court alleges the juvenile is*:

(A) Twelve or thirteen years of age at the time of the commission of the alleged offense and is a juvenile delinquent by virtue of having committed a delinquent act that constitutes a class 1 or class 2 felony or a crime of violence, as defined in section 18-1.3-406; or

(B) *Fourteen years of age or older at the time of the commission of the alleged offense and is a juvenile delinquent by virtue of having committed a delinquent act that constitutes a felony*; and

(II) After investigation and a hearing, the juvenile court finds it would be contrary to the best interests of the juvenile or of the public to retain jurisdiction.

§ 19-2.5-802(1)(a)(I)-(II) (emphasis added).

¶ 14 The parties disagree about the proper interpretation of subsection (1)(a)(I)(B). Dennel argues that a juvenile fourteen years of age or older accused of committing a felony is only eligible to have his case transferred to district court if he has also previously been adjudicated delinquent for an act that constitutes a felony. *See Nelson,* ¶ 12. In contrast, the People argue that nothing in the statute requires a prior juvenile delinquency adjudication.

6

¶ 15    We agree with the People.  Our conclusion rests on the plain language of the statute, which is where we turn first.

### 1.    Plain Language

¶ 16    The statute spells out what must be "alleged" in a delinquency petition for a case to be eligible for transfer to district court. Specifically, the statute requires the delinquency petition to allege that the juvenile is at least a certain age and that the juvenile is accused of committing an offense of at least a certain seriousness. For a child aged twelve or thirteen to be eligible for transfer, the petition must allege that the juvenile committed a delinquent act that constitutes a class 1 or 2 felony or a crime of violence, § 19-2.5-802(1)(a)(I)(A); for a juvenile fourteen years or older to be eligible for transfer, the petition must allege that the juvenile committed a delinquent act that constitutes a felony, § 19-2.5-802(1)(a)(I)(B).

¶ 17    Dennel contends, however, that while the age requirements in the statute refer to the juvenile's age at the time of the charged offense, the references to the level of offense contained in subsections (1)(a)(I)(A) and (1)(a)(I)(B) describe what the petition must allege with respect to the juvenile's adjudicatory history.  In other words, Dennel contends that for a child of twelve or thirteen

to have his case transferred to district court, he must have been *previously adjudicated* for a delinquent act that constitutes a class 1 or 2 felony or a crime of violence; and for a juvenile fourteen years old or older, he must have been *previously adjudicated* for a delinquent act that constitutes a felony.

¶ 18 We reject Dennel's urged interpretation because it doesn't comport with the plain language of the statute. We begin our plain language analysis by highlighting the significance of the word "alleges" in the transfer statute — particularly the first use of this word (in subsection (1)(a)(I)) and its impact on subsequent language. *See* § 19-2.5-802(1)(a)(I) ("A petition filed in juvenile court *alleges* the juvenile is . . . .") (emphasis added).

¶ 19 Sub-subparagraphs (A) and (B) are part of, and follow the initial language of, subsection (1)(a)(I). Therefore, they simply describe the requisite — as yet, unproven — allegations that the People must include in the petition to demonstrate transfer eligibility. *See* Webster's Third New International Dictionary 55 (2002) (defining "allege" as "to assert, affirm, state *without proof* or *before proving*") (emphasis added). Both sub-subparagraphs contain two elements linked by the conjunction "and"; they specify

8

(1) the juvenile's age at the time of the offense, *and* (2) the offense classification.  *See* § 19-2.5-802(1)(a)(I)(A), (B).

¶ 20  Thus, reading sub-subparagraph (B) in conjunction with the prefatory language in subsection (1)(a)(I), the People must allege that the juvenile (1) is fourteen years of age or older at the time of the offense, and (2) has committed a delinquent act that constitutes a felony.  As for the first required allegation, it's undisputed that the statute refers to the juvenile's age at the time of the offense alleged in the petition.  Mindful of the unproven quality of an allegation — and the fact that the word "alleges" applies equally to both elements of sub-subparagraph (B) — we conclude that the second element also refers to the present alleged offense rather than a prior felony adjudication.

¶ 21  Reading this sub-subparagraph in context confirms our conclusion.  Under section 19-2.5-802(1)(a)(I)(A), (B), the petition must simply "allege" that the juvenile is a "juvenile delinquent by virtue of having committed a delinquent act."  That is, a juvenile's delinquency status is tied only to an unproven assertion of delinquent conduct, not a juvenile's already proven adjudicatory history.

¶ 22    Moreover, the statute's focus on the allegations in the "petition" (as opposed to the motion to transfer) further underscores that the statute's reference to the allegations of delinquent conduct is to the conduct giving rise to the filing of the petition, not the juvenile's adjudicatory history. Indeed, the purpose of the petition is to put the juvenile on notice of the facts surrounding the alleged offense that brings him within the juvenile court's jurisdiction. *See* § 19-2.5-502(3), (4), C.R.S. 2022 (setting forth the form and content of a delinquency petition). The motion to transfer, not the petition, is the logical place to include collateral information such as adjudicatory history.

¶ 23    Our interpretation is further bolstered by the way that the legislature differentiates between allegations of delinquency and proven prior delinquency elsewhere in the transfer statute. For example, when listing the factors a juvenile court must consider when deciding whether to transfer a case, the legislature conspicuously differentiates between the present "alleged offense" and crimes for which the juvenile was "previously adjudicated." *Compare* § 19-2.5-802(4)(b)(II), (III) (listing factors concerning the "alleged offense"), *with* § 19-2.5-802(4)(b)(IX), (X), (XIII) (listing

10

factors that focus on whether the juvenile was "previously adjudicated" for certain delinquent acts), *and* § 19-2.5-802(4)(b)(XI) (dealing with previous commitment to the department of human services "*following* an adjudication") (emphasis added).  The contrast is particularly stark in section 19-2.5-802(4)(b)(XIII), which includes a reference to both the current and prior offenses: "Whether the juvenile is sixteen years of age or older at the time of *the offense* and *has been twice previously adjudicated* a juvenile delinquent . . . ."  (Emphasis added.)  *Cf.* § 19-2.5-801(1)(c)(II), C.R.S. 2022 (using the language "[i]s found to have a prior adjudicated felony offense" when imposing a prior adjudication requirement for direct filing a case against a juvenile in district court).

¶ 24    To put a finer point on it, for the statute to mean what Dennel contends it means, it would need to be written differently.  Instead of providing that the petition must allege that the juvenile is "[f]ourteen years of age or older at the time of the commission of the alleged offense and *is* a juvenile delinquent by virtue of having committed a delinquent act that constitutes a felony," it would use the phrase "has been previously adjudicated" in place of "is,"

11

leaving a statute reading as follows (with deleted existing language shown in ~~strike-through~~ and added hypothetical language underlined):

> (1)(a) The juvenile court may enter an order certifying a juvenile to be held for criminal proceedings in the district court if:
>
> (I) A petition filed in juvenile court alleges the juvenile is:
>
> . . . .
>
> (B) Fourteen years of age or older at the time of the commission of the alleged offense and ~~is~~ has been previously adjudicated a juvenile delinquent by virtue of having committed a delinquent act that constitutes a felony.

Indeed, as discussed above, "has been previously adjudicated" is the phrase that the legislature has used when describing adjudicatory history. *See also, e.g.*, § 19-2.5-1125(2), C.R.S. 2022 ("A juvenile is a repeat juvenile offender if the juvenile *has been previously adjudicated* a juvenile delinquent and is adjudicated a juvenile delinquent for a delinquent act that constitutes a felony . . . .") (emphasis added). But that's not the statute the legislature adopted. *See, e.g., Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 16 ("[W]e must respect the legislature's choice

of language, and we will not add words to a statute or subtract words from it.").

¶ 25    And *Nelson* doesn't persuade us otherwise, which is where we turn next.

### 2.    Addressing *Nelson*

Dennel relies on the division's opinion in *Nelson* to argue that for a fifteen-year-old's juvenile case to be eligible for transfer, he must have a prior adjudication.  *Nelson,* ¶ 12.

¶ 26    The question presented in *Nelson* was whether the district court had jurisdiction over Nelson, a juvenile, following a change in the direct file statute — a change that was adopted after Nelson had been charged but before he pleaded guilty.  *Id.* at ¶ 2.  Nelson argued that because the felony to which he pleaded guilty was no longer eligible for direct filing in district court, the district court lacked jurisdiction over him and his case.  *Id.* at ¶ 10.  In rejecting Nelson's contention, the division held that the district court had jurisdiction to accept Nelson's plea and impose a sentence if Nelson's case was eligible for *either* direct file *or* transfer.  *Id.* at ¶ 12.  And in determining that Nelson's case was eligible for transfer, the division observed,

> According to the presentence investigation report, Nelson had pleaded guilty to at least three prior felony charges and was therefore a juvenile delinquent at the time of the subject offense. Therefore, although Nelson's offenses are not eligible for direct filing under the current version of the [direct file s]tatute, they are eligible for district court jurisdiction under [the transfer statute].

*Id.* (citations omitted).

¶ 27    To be sure, in reaching its conclusion that Nelson's case was eligible for transfer to district court, the division in *Nelson* interpreted the transfer statute to require a prior felony adjudication — the very interpretation that Dennel is urging us to adopt. *Id.* For two reasons, however, we aren't persuaded that the division in *Nelson* got the interpretation of this part of the transfer statute correct. *See People v. Daley*, 2021 COA 85, ¶ 89 (we aren't bound by decisions of prior divisions).

¶ 28    First, the division in *Nelson* didn't have to parse the statute to the extent that we must here. In *Nelson*, it was undisputed that the juvenile *both* pleaded guilty to a felony in the case at issue *and* had prior felony adjudications. *Nelson*, ¶ 12 (noting that Nelson had "pleaded guilty to at least three prior felony charges"). Thus, regardless of whether the phrase "is a juvenile delinquent by virtue

14

of having committed a delinquent act that constitutes a felony," § 19-2.5-802(1)(a)(I)(B), referred to the charged offense or the juvenile's adjudicatory history, the result would have been the same for Nelson: his case was eligible for transfer. Accordingly, the *Nelson* division wasn't required to grapple with the precise issue we have before us: whether a juvenile is transfer-eligible without a previous delinquency adjudication for a felony.

¶ 29 Second, for the reasons previously articulated, our reading of the statute's plain language leads us to a different conclusion. Accordingly, given that the outcome in *Nelson* didn't turn on this issue and the division only addressed it in passing, we aren't persuaded by *Nelson* to depart from our plain language statutory analysis laid out in Part II.B.1 above.

### 3. The Purpose of the Children's Code and Policy Considerations Don't Require a Different Interpretation

¶ 30 Finally, we aren't persuaded by Dennel's contention that the "overall theme" of the Children's Code "demands that a prior felony adjudication is necessary to transfer a fourteen- or fifteen-year-old to adult court."

15

¶ 31    While section 19-2.5-802(1)(a)(I) sets forth the *minimum* requirements for transfer eligibility, a juvenile whose case satisfies those minimum requirements isn't automatically transferred to district court upon the request of a prosecutor.  Far from it.  Instead, after investigation and a hearing, the juvenile court is required to determine whether "it would be contrary to the best interests of the juvenile or of the public to retain jurisdiction."  § 19-2.5-802(1)(a)(II).  Among the factors the juvenile court *must* consider in this inquiry are the juvenile's previous adjudicatory history, *see* § 19-2.5-802(4)(b)(V), (IX), (X), (XI), (XIII), *and* the seriousness of the charged offense, *see* § 19-2.5-802(4)(b)(I), (II), (III), (VII), (VIII).

¶ 32    Thus, the legislature determined that *both* the seriousness of the charged offense *and* the juvenile's adjudicatory history (or lack thereof) *must* be taken into account when a juvenile court decides whether to transfer a case to district court.  But when drawing a bright line with respect to who is eligible for transfer, the statute the legislature crafted focuses only on the juvenile's age and the seriousness of the presently charged offense.  We aren't at liberty to second-guess that policy judgment or add requirements to it.  *See Agilent Techs.*, ¶ 16.

## C.  Application

¶ 33     The petition charging Dennel alleged that he is a juvenile delinquent "by virtue of having committed a delinquent act that constitutes a felony" — namely, second degree murder, a class 2 felony — and that he was "[f]ourteen years of age or older at the time of the commission of the alleged offense."  This satisfied the requirements of section 19-2.5-802(1)(a)(I)(B), notwithstanding the fact that Dennel had no prior felony adjudications.  Dennel doesn't challenge any other aspect of the transfer proceedings on appeal. Because the juvenile court complied with the transfer statute in certifying Dennel to be held for criminal proceedings in district court, the transfer was proper.  And because the transfer was proper, the district court had jurisdiction to accept Dennel's plea to manslaughter, a class 4 felony, and sentence him as it did.  *See* § 19-2.5-802(1)(d)(I), (II).

## III.  Attorney General's Waiver Contention

¶ 34     On appeal, the Attorney General argues, in the alternative, that even if we were to interpret the transfer statute as Dennel urges, Dennel's plea to the class 4 felony of manslaughter waived any challenge he may have to the district court's authority to take

his plea and impose a sentence. *See, e.g., Patton v. People*, 35 P.3d 124, 128 (Colo. 2001) (a guilty plea generally waives all nonjurisdictional challenges to a conviction); *Wood v. People*, 255 P.3d 1136, 1140 (Colo. 2011) (distinguishing between a court's subject matter jurisdiction and its authority to act). Dennel responds that this isn't so because his challenge is to the district court's subject matter jurisdiction over his case, and this jurisdictional challenge isn't waivable. *See, e.g.*, § 19-2.5-103(1) (vesting "exclusive original jurisdiction" over juveniles in the juvenile court "[e]xcept as otherwise provided by law"); *People v. Wetter*, 985 P.2d 79, 80 (Colo. App. 1999) (a challenge to a court's subject matter jurisdiction survives a plea and may be raised at any time, including for the first time on appeal).

¶ 35      At the core of this dispute is whether failure to satisfy the statutory prerequisites for transfer is jurisdictional or not. This, in turn, implicates whether the General Assembly may constitutionally limit the general jurisdiction of district courts. *See* Colo. Const. art. VI, § 9(1) ("The district courts . . . shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein . . . ."); *cf. People ex rel. Terrell v. Dist. Ct.*,

164 Colo. 437, 441, 435 P.2d 763, 765 (1967) (recognizing that the General Assembly could, without offending the constitution, remove the Denver District Court's jurisdiction over criminal cases involving children under the age of sixteen charged with felonies by exercising its "power to create and define crimes" and "within reasonable limits [to] fix the age below which there can be no criminal responsibility"); *People v. Sandoval*, 2016 COA 57, ¶¶ 20-22 (framing issues related to the direct file statute as implicating the General Assembly's authority to limit the Denver District Court's constitutional jurisdiction).

¶ 36     Because we conclude that, based on his age and the charge contained in the petition, Dennel was eligible for transfer, we leave for another day the question of whether a juvenile who is statutorily ineligible for transfer to district court waives a challenge to the district court's authority over him by entering a guilty plea in district court or if that defect is jurisdictional such that it survives the plea and can be raised for the first time on appeal. *See People v. Timoshchuk*, 2018 COA 153, ¶ 14 (recognizing that courts should avoid constitutional issues that need not be resolved in order to decide a case); *see also Cnty. Ct. v. Allen*, 442 U.S. 140, 154 (1979)

(Courts "have a duty to decide constitutional questions when necessary to dispose of the litigation before them.  But they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.").

## IV.   Conclusion

¶ 37    For the foregoing reasons, we affirm the district court's judgment.

JUDGE J. JONES and JUDGE SCHUTZ concur.