**S.G.W., Child–Petitioner,**

v.

**The PEOPLE of the State of Colorado, in the Interest of S.G.W., Respondent.**

**No. 86SC393.**

Supreme Court of Colorado,
En Banc.

March 14, 1988.

Rehearing Denied April 11, 1988.

Philip R. Cockerille, P.C., Philip R. Cockerille, Denver, for child-petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Solicitor General Cynthia D. Jones, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

The question presented in this case is whether the Colorado Children's Code authorizes a juvenile court to commit a "repeat-juvenile offender" who is also a "mandatory sentence offender" to the Department of Institutions (department) for a two-year term consecutive to a two-year commitment imposed in a separate delinquency adjudication.[1] The court of appeals upheld the consecutive commitment imposed by the juvenile court, and we granted S.G.W.'s petition for certiorari. We now reverse the judgment and remand the case for further proceedings.

I.

S.G.W., who was seventeen years of age at the time of the imposition of the challenged commitment, had numerous contacts with the juvenile court since the age of nine. He had been adjudicated a delin-

1. The Colorado Children's Code was repealed and reenacted in 1987, with an effective date of October 1, 1987. Ch. 138, sec. 1, 1987 Colo. Sess. Laws 695. Because the proceedings in this case arose prior to the effective date of the 1987 enactment, our citations are to the former version of the Colorado Children's Code found in Title 19 of Volume 8B (1986) of the Colorado Revised Statutes.

quent child on four prior occasions, had run away from court-imposed detention several times, and had a discouraging treatment record.[2]

On January 25, 1985, S.G.W. appeared before the Denver Juvenile Court for a dispositional hearing on two delinquency petitions. Previously, on May 14, 1984, S.G.W., who at all times was represented by counsel, admitted the allegations of the delinquency petition alleging second degree burglary and theft committed on April 30, 1984, and a disposition hearing was scheduled on September 6, 1984. In the interim, however, S.G.W., who had been in the custody of the department on a prior delinquency adjudication, left the department's school program and burglarized a building on October 25, 1984. When S.G.W. appeared in court for a dispositional hearing on January 25, 1985, a second delinquency petition had been filed based on the burglary of October 25, 1984. S.G.W. admitted the allegations of the second petition. Because of his prior delinquency adjudications, he qualified under the Children's Code as both a "repeat juvenile offender," § 19–1–103(23.5), and a "mandatory sentence offender," § 19–1–103(19.5).

Based on S.G.W.'s admissions to the first petition alleging second degree burglary and theft on April 30, 1984, the juvenile court adjudicated him a delinquent child for the fifth time and committed him to the department for a term of two years commencing on the day of the disposition, January 25, 1985. The court then adjudicated S.G.W. a delinquent child for the sixth time on the second delinquency petition alleging second degree burglary on October 25, 1984, and committed him to a second two-year term, subject to the following proviso: that S.G.W. was to be retained in a juvenile institution for not less than one year and ten months; and that the commitment was to be stayed until January 25, 1987, at which time it would commence and would expire on December 12, 1988, when S.G.W. would reach twenty-one years of age.[3] In functional effect, the juvenile court's second order of commitment amounted to a consecutive term.

S.G.W. appealed to the court of appeals. Relying on its prior decision in *People in the Interest of S.A.E.*, 724 P.2d 100 (Colo. App.1986), which upheld a consecutive term of commitment as consistent with the purposes of the Children's Code, the court of appeals affirmed the judgment of the juvenile court. We thereafter granted S.G.W.'s petition for certiorari to consider whether the Children's Code authorizes the consecutive commitment which the juvenile court ordered in this case.

## II.

Before directly addressing the issue before us, we believe it will be helpful to set forth those basic precepts of statutory interpretation, along with the pertinent statutory provisions applicable to this case, which will guide our analysis.

---

2. A "delinquent child" includes any child ten years of age or older who has violated any federal or state law, except nonfelony state, traffic, game and fish, and parks and recreation laws or regulations. § 19–1–103(9)(a), 8B C.R.S. (1986). The definition of a "delinquent child" does not include the following: children fourteen years of age or older who allegedly commit crimes of violence defined by section 18–1–105, 8B C.R.S. (1986), as class 1 felonies; children who within the previous two years have been adjudicated a delinquent child, and the act for which the child was adjudicated a delinquent would have been a felony if committed by an adult, and who are sixteen years of age or older, and allegedly commit class 2 or 3 felonies, except sexual assault in the second degree as defined by section 18–3–403(1)(e), 8B C.R.S. (1986); children who commit criminal acts which are nonclassified felonies punishable by life imprisonment or death; children fourteen years of age or older who commit any felony subsequent to any other felony which was transferred from the juvenile court to the district court for prosecution, except when the child was not found guilty in the district court of the prior felony or any lesser included offense; and children who are alleged to be in contempt of a municipal court, regardless of whether the penalty for such contempt may be confinement. § 19–1–103(9)(b), 8B C.R.S. (1986).

3. The juvenile court's jurisdiction over any child adjudicated as a delinquent continues until he becomes twenty-one years of age unless terminated by court order. § 19–3–118, 8B C.R.S. (1986).

### A.

Our primary task in interpreting a statute is to ascertain and give effect to the legislative purpose underlying a statutory enactment. *E.g., People v. Guenther*, 740 P.2d 971, 975 (Colo.1987); *People v. District Court*, 713 P.2d 918, 921 (Colo.1986). "To discern that intent, we look first to the language of the statute itself, giving the statutory terms their commonly accepted and understood meaning." *Guenther*, 740 P.2d at 975. The General Assembly expressly declared that the Colorado Children's Code was enacted to effectuate the following purposes: to secure for each child such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society; to preserve and strengthen family ties whenever possible, including improvement of the home environment; to remove a child from the custody of his parents only when his welfare and the safety or protection of the public would otherwise be endangered and to require the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and to secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society. § 19–1–102(1), 8B C.R.S. (1986).

In keeping with these purposes, the General Assembly has directed that the Children's Code should be liberally construed in order to "serve the welfare of children and the best interests of society." § 19–1–102(2), 8B C.R.S. (1986). While many of the basic protections traditionally associated with a criminal prosecution have been applied to a delinquency proceeding in order to ensure fundamental fairness to the child, *see In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *J.T. v. O'Rourke*, 651 P.2d 407 (Colo.1982); *People in the Interest of C.B.*, 196 Colo. 362, 585 P.2d 281 (1978), our prior decisions have consistently emphasized that a delinquency proceeding is not a criminal prosecution. *People ex rel. Terrell v. District Court*, 164 Colo. 437, 444, 435 P.2d 763, 766 (1967); *accord S.A.S. v. District Court*, 623 P.2d 58, 60 (Colo.1981); *People in the Interest of R.A.D.*, 196 Colo. 430, 433, 586 P.2d 46, 47 (1978). Indeed, it is precisely "to protect the young from the stigma frequently associated with criminal proceedings" that a petition in delinquency is classified as civil in character. *S.A.S.*, 623 P.2d at 60; *see also People in the Interest of T.M.*, 742 P.2d 905, 907 (Colo.1987); *People in the Interest of R.A.D.*, 196 Colo. at 433, 586 P.2d at 47.

■■ Although a delinquency proceeding is not a criminal prosecution, we must be mindful that the commitment of a juvenile to the department does implicate in a substantial way the liberty interests of the committed child. If the Children's Code is patently ambiguous with respect to a juvenile court's authority to impose a consecutive term of commitment on an adjudicated delinquent, we believe that we may appropriately resort to the rule of lenity in resolving that ambiguity. The rule of lenity requires that an ambiguity in a penal statute be construed in a manner that favors the person whose liberty interests are affected by the statute. *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955); *People v. Chavez*, 659 P.2d 1381, 1384 (Colo.1983); *see People v. Lowe*, 660 P.2d 1261, 1267–68 (Colo.1983). In our view, a statutory scheme involving the length of commitment applicable to an adjudicated delinquent child is clearly penal in character for purposes of the rule of lenity. *See In re Poff*, 135 F.Supp. 224 (D.D.C.1955) (insofar as statute relating to delinquent children purports to restrain liberty interest of child, it should be construed in favor of child); *Logan v. United States*, 483 A.2d 664 (D.C.1984) (same); *Phillips v. State*, 20 S.W.2d 790 (Tex.Crim. App.1929) (same).

### B.

The statutory provisions central to this case are those provisions of the Children's Code relating to a juvenile court's authority to commit a "repeat juvenile offender" and a "mandatory sentence offender" to the

department. As pertinent here, a "repeat juvenile offender" is defined as a previously adjudicated delinquent child, who is adjudicated a delinquent child for an offense which would constitute a felony if committed by an adult, § 19–1–103(23.5), and a "mandatory sentence offender" includes a child who has twice been adjudicated a delinquent and is subsequently adjudicated a delinquent child, § 19–1–103(19.5)(a)(I) and (b)(I). Section 19–3–113.1(2)(a) authorizes the juvenile court to commit a "repeat juvenile offender" to the department; and section 19–3–113.1(2)(b) requires the juvenile court to place or commit a "mandatory sentence offender," less than eighteen years of age on the date of disposition, "out of the home for not less than one year." Pursuant to section 19–3–114(3)(b), a commitment to the department must be for a determinate period not in excess of a total of two years. With the exception of the commitment of an "aggravated juvenile offender," which may be for a determinate period of five years, § 19–3–113.2(1),[4] all other commitments of adjudicated delinquents to the department including a commitment of a "repeat juvenile offender" and a "mandatory sentence offender," cannot exceed a total of two years. Section

19–3–114(3)(c) permits an extension of a two-year commitment under the following circumstances:

The department of institutions may petition the committing court to extend the commitment for an additional period not to exceed two years. The petition shall set forth the reasons why it would be in the best interest of the child or the public to extend the commitment. Upon filing the petition, the court shall set a hearing to determine whether the petition should be granted or denied and shall notify all interested parties.

### III.

█ Turning now to the validity of the consecutive term of commitment imposed on S.G.W., we conclude that the Children's Code does not authorize a consecutive term of commitment in the case of a "repeat juvenile offender" who, as here, is also a "mandatory sentence offender." Several considerations lead us to this result.

### A.

We initially note that the Colorado Children's Code is silent on the authority of the juvenile court to impose a consecutive term of commitment. Section 19–3–113.1(2)(a)

---

**4.** Section 19–1–103(2.1), 8B C.R.S. (1986), defines an "aggravated juvenile offender" to mean any child:

(a) Twelve years of age or older who is adjudicated a delinquent child for an act which would constitute murder in the first degree or murder in the second degree if committed by an adult or whose probation is revoked for an act which would constitute murder in the first degree or murder in the second degree if committed by an adult; or

(b) Sixteen years of age or older, and after July 1, 1984, is adjudicated a delinquent child for an offense which would constitute a felony if committed by an adult, and who is subsequently adjudicated a delinquent child for an act which would constitute a crime of violence, as defined in section 16–11–309(2), C.R.S., if committed by an adult, or whose probation is revoked for an act which would constitute a crime of violence, as defined in section 16–11–309(2), C.R.S., if committed by an adult.

Section 19–3–113.2(2), 8B C.R.S. (1986), authorizes the court to permit the Department of Institutions to transfer an "aggravated juvenile offender" to the Department of Corrections if the child has reached eighteen years of age and

if it is established by a preponderance of the evidence that the child is no longer benefiting from the rehabilitative program of the Department of Institutions. If the child is transferred to the Department of Corrections, the court is required to amend the mittimus and transfer all further jurisdiction over the child to the Department of Corrections. § 19–3–113.2(2)(d), 8B C.R.S. (1986). The statute also provides that if the "aggravated juvenile offender" has been in the custody of the Department of Institutions for three or more years, the department may petition the court for an order authorizing the release of the child subject to parole supervision. § 19–3–113.2(3)(a), 8B C.R.S. (1986). To authorize such a release, the court must find by a preponderance of the evidence that "the safety of the community will not be jeopardized by such release." *Id.* The statutory provisions relating to "aggravated juvenile offender" make no express provisions for an extension of the term of commitment. Whether the two-year extension authorized by section 19–3–114(3)(c), 8B C.R.S. (1986), is applicable to the five-year commitment of an "aggravated juvenile offender" is an issue we need not, and do not, address in this case.

authorizes the court to commit a "repeat juvenile offender" to the department, and section 19–3–113.1(2)(b) authorizes an "out of home" commitment of a "mandatory sentence offender" for not less than one year. The statutory scheme is such that any commitment to the department cannot exceed a term of two years. § 19–3–114(3)(b). While this two-year commitment may be extended by court order, such extension must be based on the petition of the department and an appropriate showing that the best interests of the child or the public justify the extension. Section 19–3–114(3)(c) clearly contemplates that the juvenile court, in passing on a petition for extension of commitment, will focus primarily on the rehabilitative interests of the committed juvenile, as manifested by his conduct during the initial term of commitment. The fact that the juvenile court is authorized under appropriate circumstances to extend the term of an initial commitment does not translate into statutory authorization for the juvenile court to impose a consecutive term of commitment in the first instance.

Under the plain terms of the Children's Code, therefore, any commitment of a "repeat juvenile offender" or a "mandatory sentence offender" to the department could only be for two years, with the possibility of an extension for an additional two years. *See Rocha v. People*, 713 P.2d 350, 353 (Colo.1986). If the General Assembly intended to authorize a juvenile court to impose a consecutive term of commitment upon a "repeat juvenile offender" or a "mandatory sentence offender," we must assume that it would have employed statutory terminology which clearly expressed that intent, as it has done under other circumstances when a consecutive sentence

has been authorized. *See* § 16–11–309(1)(a), 8A C.R.S. (1986) (consecutive sentence expressly required for a person convicted of two separate crimes of violence arising out of same incident); § 18–1–408(3), 8B C.R.S. (1986) (court may, in its discretion, impose consecutive sentences when defendant is convicted of more than one offense arising out of same criminal episode and involving multiple victims); § 18–8–209, 8B C.R.S. (1986) (consecutive sentence required for convictions relating to escape and various crimes committed while in custody). The failure of the General Assembly to incorporate into the Children's Code statutory authorization for a consecutive term of commitment can only be construed as a deliberate legislative choice not to authorize such a sanction in the case of an adjudicated juvenile delinquent.[5]

### B.

Construing the Children's Code to authorize a consecutive term of commitment, particularly in light of the legislative silence on that matter, would be at odds with the beneficent purposes which the Code seeks to further. Since the enactment of the Colorado Children's Code in 1967, our decisions have consistently emphasized that a delinquency proceeding is not a criminal prosecution directed towards the conviction and punishment of offenders but, rather, is a special statutory proceeding calculated to secure the best interests of the child in a manner consistent with the interests of society. The observations which this court made over twenty years ago in *People ex rel. Terrell* are no less appropriate today:

Counsel for the respondents argue that any attempted distinction between a

5. Our construction of the Children's Code as not authorizing a consecutive term of commitment does not mean that a juvenile court may not impose a two-year term of commitment for an act of delinquency on a "repeat juvenile offender" or a "mandatory sentence offender" who has previously been committed to a two-year term in a separate delinquency proceeding and, at the time of the second commitment, has already served some portion of the first commitment. In other words, we do not construe the Colorado Children's Code to prohibit a juvenile court from imposing separate terms of commitment on a "repeat juvenile offender" or a "mandatory sentence offender" for separate acts of delinquency, even though under such circumstances the total term of commitment for all acts of delinquency might well exceed the two-year maximum as a result of the separate dates for the commencement of the respective commitments. Our construction goes no further than prohibiting a juvenile court from ordering a particular term of commitment consecutive to a previously imposed term of commitment.

"criminal" proceeding and a "delinquency" proceeding is "artless" and but a play upon words, as in a given case the underlying misconduct could be the same. With this line of reasoning we do not agree. There is a very fundamental difference between a criminal proceeding and a delinquency proceeding, and in our view the clear legislative intent is that the handling of juvenile delinquents should be oriented towards rehabilitation and reformation, and not punishment as such, even though the actions of the child if committed by an adult would justify a criminal proceeding.

164 Colo. at 444–45, 435 P.2d at 766; *accord People in the Interest of T.M.,* 742 P.2d 905; *S.A.S. v. District Court,* 623 P.2d 58; *People in the Interest of R.A.D.,* 196 Colo. 430, 586 P.2d 46. Except in those limited circumstances in which a child under the age of eighteen years of age may be prosecuted as an adult, *see* §§ 19–1–103(9) and 19–1–104(4), a child who is adjudicated a delinquent under the Colorado Children's Code stands before the juvenile court not as a convicted criminal but as a child in need of reformation. The appropriateness of this orientation toward rehabilitation and reformation is highlighted in the Task Force Report on Juvenile Delinquency, President's Commission on Law Enforcement and Administration of Justice: Juvenile Delinquency and Youth Crime 9 (1967) (quoted in *McKeiver v. Pennsylvania,* 403 U.S. 528, 546 n. 6, 91 S.Ct. 1976, 1986 n. 6, 29 L.Ed.2d 647 (1971)):

> [S]ocial protection itself demands constant search for alternatives to the crude and limited expedient of condemnation and punishment.... Rehabilitating offenders through individualized handling is one way of providing protection, and appropriately the primary way in dealing with children.

### C.

In upholding the validity of the consecutive commitment in this case, the court of appeals relied on its prior decision in *People In the Interest of S.A.E.,* 724 P.2d 100. We view that reliance as misplaced, and we expressly overrule *S.A.E.*

In *S.A.E.,* the court of appeals initially drew upon the public safety and rehabilitative purposes expressed in the Colorado Code of Criminal Procedure and the Colorado Criminal Code, *see* § 16–1–103, 8A C.R.S. (1986); §§ 18–1–102 and –102.5, 8B C.R.S. (1986), and then, by comparative analogy, underscored the fact that the Colorado Children's Code has similar goals. This comparative analysis led the court to conclude that the purposes of the Colorado Children's Code would be fostered by the sanction of a consecutive commitment.

The analysis employed by the court of appeals in *S.A.E.* loses sight of the fundamental differences between the juvenile system of justice and an adult criminal prosecution. Among those differences is the overriding goal of the Children's Code to provide guidance and rehabilitation to an adjudicated delinquent child in a manner consistent with the best interests of the child and the protection of society, "rather than fixing criminal responsibility, guilt, and punishment." *People in the Interest of T.M.,* 742 P.2d at 907. In striking contrast to the Colorado Children's Code, the Colorado Criminal Code lists first among these many purposes of sentencing the following: "[t]o punish a convicted offender by assuring the imposition of a sentence he deserves in relation to the seriousness of his offense." § 18–1–102.5(1)(a), 8B C.R.S. (1986).

While the court of appeals' decision in *S.A.E.* correctly observed that public safety and rehabilitation are legitimate goals of both the adult criminal justice system and a proceeding in delinquency, it simply does not follow from that observation that we should construe legislative silence on the matter of a consecutive term for a juvenile offender as an implicit authorization for such a sanction. Indeed, to the extent that such legislative silence might be construed as a statutory ambiguity, we believe the rule of lenity requires that any such ambiguity be resolved in favor of the liberty interests of the committed juvenile. *In re Poff,* 135 F.Supp. at 225–26; *Logan,* 483 A.2d at 666; *Phillips,* 20 S.W.2d at 791;

see *Bell,* 349 U.S. at 83, 75 S.Ct. at 622; *Chavez,* 659 P.2d at 1384.

We therefore hold that, in the absence of an express authorization in the Children's Code for consecutive terms of commitment, a juvenile court lacks authority to impose such a sanction on a "repeat juvenile offender" who is also a "mandatory sentence offender."[6]  We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the juvenile court for resentencing of S.G.W. in a manner consistent with the views expressed herein.

ERICKSON, J., dissents, and
VOLLACK, J., joins in the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent for the reasons set forth in *In re S.A.E.,* 724 P.2d 100 (Colo. App.1986). *In re S.A.E.* reviewed the issue that is before us in this case and recognized that the power to impose consecutive sentences lies within the broad discretion of the trial court.  Our denial of certiorari review in *In re S.A.E.* means only that the case was not properly postured for review. *See Menefee v. City and County of Denver,* 190 Colo. 163, 544 P.2d 382 (1976). However, I believe that the court of appeals correctly concluded that consecutive sentencing of a repeat juvenile offender lies within the sound discretion of the trial court. *In re S.A.E.* upholds the broad authority of a juvenile court judge to commit juvenile offenders to the Department of Institutions. *See* §§ 19–3–113 to –114, 8B C.R.S. (1986).  Any change in sentencing procedures which would foreclose the imposition of a consecutive sentence on a repeat juvenile offender should be prescribed by the General Assembly and not by this court.

As the majority has pointed out, many of the constitutional rights guaranteed to an adult in the criminal courts are guaranteed to a juvenile. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).  However, differences exist between the rights afforded adults and juveniles because of the rehabilitative and reformative nature of delinquency proceedings. *See McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).  As recognized in *In re S.A.E.,* a criminal sentence, being punitive in nature, is significantly more intrusive on constitutional rights than the commitment of a juvenile to the Department of Institutions. Here, the majority acknowledges that there is no statutory limitation imposed on the sentencing power of the trial court and I would not read such a limitation into the Children's Code.

Since the trial court did not abuse its discretion in imposing consecutive sentences under the facts of this case, I dissent.

I am authorized to say that Justice VOLLACK joins in this dissent.

---

**6.** In urging a contrary holding, the People argue that the juvenile judge in this case imposed a consecutive sentence not for the purpose of punishment but rather in consideration of the best interests of the child.  Regardless of whether the consecutive term was imposed in the interest of the child, for the purpose of punishment, or both, the Children's Code provides a specific method to address any need for further confinement of a delinquent who has not adequately reformed during the period of a two-year commitment.  As we have already discussed in the text, section 19–3–114(3)(c) permits the department to petition the juvenile court to extend a commitment for an additional period not to exceed two years when such extended commitment "would be in the best interest of the child or the public."