2014 COA 98

**PEOPLE of the State of Colorado,
Petitioner–Appellee,**

**IN the INTEREST OF J.S.R.,
Juvenile–Appellant.**

**Court of Appeals No. 13CA1812**

Colorado Court of Appeals,
Div. V.

Announced July 31, 2014

As Modified August 28, 2014

after, the approval (or "authorization") under section 24–50–104.5(1) of paid leave time.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee

Douglas K. Wilson, Colorado State Public Defender, Gail L. Morrison, Deputy State Public Defender, Denver, Colorado, for Juvenile–Appellant

Opinion by JUDGE ASHBY

¶ 1 The sentencing court sentenced defendant, J.S.R., to a one-year term of commitment in the custody of the Division of Youth Corrections (DYC), plus mandatory parole. It also ordered that, upon release from the DYC, J.S.R. was to serve a one-year term of probation. J.S.R. moved to correct an illegal sentence, which the district court denied. We conclude that the district court misinterpreted section 19–2–907(1), C.R.S.2013, as allowing the combination of a one-year term of commitment to the custody of the DYC followed by a one-year term of probation for J.S.R.'s single adjudication. And, because the court's combination of probation and commitment exceeded the 45–day maximum commitment allowed under section 19–2–925(1)(a), C.R.S.2013, we reverse the order, vacate the sentence, and remand the case with directions.

## I. Background

¶ 2 J.S.R. had previously been adjudicated a juvenile delinquent in two separate cases and had two new delinquency cases pending against him. He entered into a plea agreement wherein he pleaded guilty to one count of felony menacing and one count of possession of a handgun by a juvenile in one of the cases in exchange for dismissal of the remaining two counts and the second pending case. The agreement left sentencing to the court's discretion.

¶ 3 After accepting J.S.R.'s pleas, the court adjudicated J.S.R., who was then seventeen years old, a juvenile delinquent as a mandatory sentence offender and sentenced him to the DYC for a determinate one-year mandatory minimum term of commitment, and a mandatory parole period. The court also ordered that J.S.R. complete one year of probation immediately following his release from the DYC and advised him that, since he would be eighteen years old upon his release from the DYC, he would be subject to a county jail sentence if he did not comply with probation.

¶ 4 J.S.R. successfully completed his term of commitment and began serving his probationary term in February 2013. The parole board also imposed a period of parole supervision as required by statute.[1]

¶ 5 In June and July 2013, the probation department filed petitions to modify or revoke J.S.R.'s probation, which each resulted in his arrest. Soon thereafter, J.S.R. filed a motion to correct an illegal sentence, alleging that the probationary term was illegal. After a hearing, the court denied J.S.R.'s motion. When this appeal was filed, J.S.R. had posted bond awaiting resolution of the pending probation revocation petitions and was under parole supervision.

## II. Discussion

¶ 6 J.S.R. contends that the sentencing court imposed an illegal sentence by ordering him to serve a one-year commitment in the DYC's custody followed by one year of probation. He argues numerous bases in support of that contention. We agree that the sentencing court erred in interpreting its sentencing authority pursuant to sections 19–2–907 and 19–2–908, C.R.S.2013, and that the sentence imposed was illegal.

### A. Mootness

¶ 7 Initially, we reject the People's contention that this issue is moot. "A case is moot when a judgment, if rendered, would have no practical legal effect on an existing controversy." *Warren v. People*, 192 P.3d 477, 478 (Colo.App.2008).

---

1. The parole board, as authorized by section 19–2–1002(5)(a), C.R.S.2013, extended J.S.R.'s initial parole period from six months to one year. The board had authority to extend his parole supervision for up to twenty-one months.

¶ 8 J.S.R. is currently out on bail for alleged probation violations. Thus, whether or not a term of probation was authorized will have a direct effect on him, the pending petitions to revoke his probation, and his sentence, if any, for the alleged probation violations.

### B. Legality of the Sentence

¶ 9 The district court denied J.S.R.'s motion to correct an illegal sentence, finding that section 19–2–907 allows for a combination of sentencing options and, therefore, the DYC commitment and sequential probation sentence was statutorily authorized.

¶ 10 Having reviewed the relevant statutes, and considering the legislative intent behind juvenile sentencing and the Children's Code as a whole, we conclude that the district court misinterpreted the scope of the sentencing court's authority pursuant to section 19–2–907(1) to combine sentencing options. Accordingly, the court erred by denying J.S.R.'s motion to correct an illegal sentence.

¶ 11 We reach this conclusion by first considering the relationship between the general sentencing statute, section 19–2–907; and the mandatory sentence offender sentencing provision, section 19–2908(1)(a). We then interpret a court's authority to impose a combination of sentencing options under section 19–2–907. We conclude that sections 19–2–907 and 19–2–908(1)(a) can be harmonized and applied together; however, here, the district court erred in the combination that it chose, thereby imposing an illegal sentence.

¶ 12 "An illegal sentence is one that is not authorized by law, meaning that it is inconsistent with the sentencing scheme established by the legislature." *People v. Jenkins*, 2013 COA 76, ¶ 11, 305 P.3d 420; *see Delgado v. People*, 105 P.3d 634, 636 (Colo. 2005). Such claims may be raised at any time. Crim. P. 35(a); *Jenkins*, ¶ 11; *People v. White*, 179 P.3d 58, 61 (Colo.App.2007). We review the legality of a sentence de novo. *See People v. Bassford*, 2014 COA 15, ¶ 20, —— P.3d ——; *Jenkins*, ¶ 11.

¶ 13 We also review issues involving statutory interpretation de novo. *A.S. v. People*, 2013 CO 63, ¶ 10, 312 P.3d 168; *Bostelman v. People*, 162 P.3d 686, 689 (Colo. 2007). In doing so, our primary goal is to ascertain and give effect to the legislature's intent, "reading applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts." *A.S.*, ¶ 10. "When interpreting a comprehensive legislative scheme, we construe each provision to further the overarching legislative intent. . . . When a statute is part of a complex of sentencing prescriptions, the entire scheme should be construed to give consistent, harmonious, and sensible effect to all of its parts." *Id.* at ¶ 11.

### 1. Interpretation of the Relationship between Sections 19–2–907 and 19–2–908

¶ 14 Section 19–2–907 lists the various sentencing options that a court may impose and, as relevant here, reads as follows:

(1) Upon completion of the sentencing hearing, pursuant to section 19–2–906, *the court shall enter a decree of sentence or commitment imposing any of the following sentences or combination of sentences, as appropriate*:

(a) Commitment to the department of human services, as provided in section 19–2–909;

. . .

(e) Probation, as provided in section 19–2–913 . . . .

(2) *The judge shall sentence any juvenile adjudicated as a special offender as provided in section 19–2–908.*

(Emphasis added.)

¶ 15 The relevant portion of section 19–2–908 states:

(1) The court shall sentence a juvenile adjudicated as a special offender as follows:

(a) **Mandatory sentence offender.** The court shall place or commit any juvenile adjudicated as a mandatory sentence offender, as described in section 19–2–516(1), out of the home for not less than one year, unless the court finds that an alternative sentence or a commitment of less than one

year out of the home would be more appropriate....

¶ 16 J.S.R. contends that section 19–2–908(1)(a) is an independent sentencing provision that only authorizes the sentencing court to place or commit a mandatory sentence offender out of the home and, because it does not specifically authorize a probationary sentence, the court cannot impose one. He further argues that, because section 19–2–907(2) requires that a mandatory sentence offender be sentenced pursuant to section 19–2–908(1)(a), he is not subject to the provisions of section 19–2–907(1) or to any sentence or combination of sentences that could otherwise be imposed for a non-mandatory sentence offender.

¶ 17 J.S.R. also contends that, even if the court is permitted to use the sentencing options described in section 19–2–907(1) when it makes the necessary finding that an alternative sentence is more appropriate, because the sentencing court did not make such a finding and sentenced him to a mandatory minimum commitment period, none of the sentencing options provided in section 19–2907(1) were authorized.

¶ 18 The People contend that sections 19–2–907 and 19–2–908 are not mutually exclusive. They argue that a sentencing court is authorized to impose a sentence, or combination of sentences, as outlined in section 19–2–907(1) as long as it also complies with section 19–2–908(1)(a).

¶ 19 We conclude that section 19–2–908 is a supplement to, not a substitute for, section 19–2–907. We further conclude that the sentencing options listed in section 19–2–907 are applicable to mandatory sentence offenders and may be combined with the statutorily mandated one-year minimum sentence to out-of-home placement or commitment pursuant to section 19–2–908(1)(a) as long as any such sentence is authorized by and consistent with the other provisions of the Children's Code. To conclude otherwise would lead to absurd results. *See A.S.*, ¶ 12 (we must avoid an interpretation that would lead to an absurd result).

¶ 20 If we interpret the language of section 19–2–908(1)(a) as fully describing the sentencing options available for a mandatory sentence offender, the sentencing court would be limited to the following sentences:

- a mandatory minimum one-year out-of-home placement; or
- a mandatory minimum one-year commitment to the DYC; or
- the court may make findings that another sentence is more appropriate and
- impose a minimum commitment of less than one year; or
- impose an alternative sentence (with no description of what alternative sentence is authorized).

¶ 21 Section 19–2–908 adds to section 19–2–907 the additional option of a minimum sentence and sets the expectation that a minimum term of certain of those enumerated options—commitment or out-of-home placement—must be used for mandatory offenders *unless* findings are made that an alternative sentencing option, or combination thereof as provided in section 192–907, is more appropriate. This additional sentencing option of a minimum sentence of out-of-home placement or commitment for special offenders, including mandatory sentence offenders, recognizes that this class of offenders likely poses a higher risk to the community and requires a higher degree of supervision than non-special offenders.

¶ 22 Because section 19–2–908(1)(a) does not by its own language provide for many of the sentencing options otherwise authorized by the Children's Code, it must be read together with other provisions of the sentencing scheme if the sentencing court is to have access to the sentencing options for special offenders that enhance supervision and accountability. If we interpret section 19–2908(1)(a) as a self-contained sentencing provision, rather than a supplement to section 19–2–907, it would result in less supervision and accountability for mandatory and other special offenders than that available for non-mandatory offenders. For example, the sentencing court would not be able to impose:

- probation supervision for a mandatory offender who is placed out of the home as provided by sections 19–2–913 and 19–2925;

• a period of parole for any mandatory offender who is committed to the DYC as provided by sections 19–2–909, 19–2921, and 19–2–1002, C.R.S.2013; or

• a fine as provided in section 19–2–917, C.R.S.2013.

¶ 23 When we look at these statutes and other specific statutory provisions that describe more fully each of the sentencing options included in section 19–2–907, we see no legislative intent to exclude special offenders sentenced pursuant to section 19–2–908 from these sentencing options. By contrast, the legislature has been explicit when limiting the applicability of specific sentencing options to other classes of offenders. These limitations have been applied to only one class of offenders—aggravated juvenile offenders sentenced pursuant to section 19–2–601, C.R.S.2013. *See, e.g.,* §§ 19–2–910 to –917, C.R.S.2013. The legislature could have similarly chosen to exclude mandatory sentence offenders, but it did not. *See Springer v. City & Cnty. of Denver,* 13 P.3d 794, 804 (Colo.2000) ("Where the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute."); *People v. Sorrendino,* 37 P.3d 501, 504 (Colo. App.2001) ("[A] court should not read into a statute an exception, limitation, or qualifier that its plain language does not suggest, warrant, or mandate.").

¶ 24 Although we do not decide today the legislative intent in drafting the provisions of section 19–2–601, it may be helpful to our understanding of the relationship between sentencing provisions to observe how that provision compares to sections 19–2–907 and 192–908.

¶ 25 Unlike section 19–2–908, both section 19–2–601 and section 19–2–907, within the statutes themselves and by specific reference to other statutory sentence provisions, detail each sentencing option available to the court. Both sections 19–2–601 and 19–2907, in conjunction with those other statutory provisions, create a comprehensive menu of sentencing options, which allows the court to appropriately fashion a sentence that meets the juvenile's, community's, and victim's needs. Section 19–2–908, if interpreted as a sentencing statute completely independent of section 19–2–907, would not.

¶ 26 Those statutes that describe a specific type of sentence that a sentencing court is authorized to use refer specifically to sentences imposed pursuant to sections 19–2–601 and 19–2–907—none reference section 19–2–908. *See, e.g.,* § 19–2–917 (a fine may be imposed alone, or in combination with, any other sentence imposed pursuant to section 19–2–907); § 19–2–918, C.R.S.2013 (restitution shall be ordered in addition to any other sentence imposed pursuant to section 19–2–907); § 19–2–919, C.R.S.2013 (any sentence imposed pursuant to section 19–2–907 may include requirements for the juvenile's parents); § 19–2–920, C.R.S.2013 (requires that the court and law enforcement be notified when a juvenile sentenced to detention, commitment or placement pursuant to section 19–2–907 runs or escapes from detention, commitment, or placement); § 19–2–921(5)(a) (requires the DYC to conduct periodic reviews for any juvenile committed pursuant to section 19–2–601 or section 19–2–907 who is placed in a community placement); § 19–2–921(6) (sets a period of parole supervision for any juvenile committed pursuant to section 19–2–601 or section 192–907); § 19–2–923, C.R.S.2013 (allows the DYC to transfer juveniles committed pursuant to section 19–2–601 or section 19–2907. from one state human services facility to another); § 19–2–1002 (provides for parole supervision of a juvenile committed to the DYC pursuant to section 19–2–601 or section 19–2–907).

¶ 27 Section 19–2–907 then generally describes the sentence options that a court may impose upon any offender, while section 19–2–908 establishes an expectation for how certain of these options will be used for special offenders. Excluding mandatory offenders from an order of restitution, a period of parole supervision, a transfer within DYC facilities, and other sentencing provisions listed would be unreasonable and inconsistent with the articulated purposes of the juvenile justice sentencing scheme. *See* § 19–2–102, C.R.S.2013; *A.S.,* ¶ 14 ("The juvenile justice system aims to provide guidance, rehabilitation, and restoration for the juvenile and to protect society, rather than

focusing principally on criminal conduct and assigning criminal responsibility, guilt, and punishment."); *see also Bostelman,* 162 P.3d at 691. We find no basis to conclude that the legislature intended to do so and, therefore, reject such an interpretation.

¶ 28 We have considered the alternative interpretation of section 19–2–907's applicability to section 19–2–908 proposed by J.S.R.: sentencing options listed in section 19–2–907 are not available if the court imposes the one-year minimum out-of-home placement or commitment sentence unless the court finds that an alternative sentence is appropriate. We conclude such an interpretation does not effectively harmonize sections 19–2–907 and 19–2–908 with each other or with other juvenile sentencing statutes for the reasons already discussed: (1) the legislature could have expressly excluded mandatory offenders and it chose not to do so and (2) there is no basis to find that the legislature intended to hold more serious offenders less accountable than other offenders.

¶ 29 Having determined that a court may use the sentencing options provided in section 19–2–907 when sentencing a mandatory offender, we next consider whether there are, nonetheless, limitations placed upon that authority.

2. Interpretation of a Sentencing Court's Authority to Combine Sentences under Section 19–2–907(1)

¶ 30 "Generally, we construe the provisions of the Children's Code liberally in order to accomplish the purpose of the Code and to effectuate the legislature's intent. We must avoid a technical reading that would disregard the child's best interests and the legislature's intent." *Bostelman,* 162 P.3d at 690 (citation omitted).

¶ 31 Juvenile sentencing is governed by sections 19–2–901 to –926, C.R.S.2013, of the Children's Code. The overarching purpose of the juvenile justice system is

to protect, restore, and improve the public safety by creating a system of juvenile justice that will appropriately sanction juveniles who violate the law and, in certain cases, will also provide the opportunity to

bring together affected victims, the community, and juvenile offenders for restorative purposes. The general assembly further finds that, while holding paramount the public safety, the juvenile justice system shall take into consideration the best interests of the juvenile, the victim, and the community in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice system and to assist the juvenile in becoming a productive member of society.

§ 19–2–102, C.R.S.2013; *see A.S.,* ¶ 14; *Bostelman,* 162 P.3d at 691; *S.G.W. v. People,* 752 P.2d 86, 88 (Colo.1988). Thus, unlike the adult criminal justice system, the purpose of the juvenile system is primarily rehabilitative, not punitive. *See A.S.,* ¶ 15 ("Whereas the adult criminal justice system emphasizes punitive penalties, the legislature intended the juvenile justice system to remain informal, flexible, and focused on rehabilitation."); *Bostelman,* 162 P.3d at 691; *People v. J.J.H.,* 17 P.3d 159, 163 (Colo.2001).

¶ 32 To facilitate this rehabilitative purpose, the sentencing court generally has discretion to impose a combination of sentences, as provided in section 19–2–907. *See A.S.,* ¶ 15. Although the juvenile sentencing scheme is intended to give a sentencing court broad authority to craft a sentence that meets the juvenile's and the community's best interests, this authority may be limited. *People in Interest of R.W.V.,* 942 P.2d 1317, 1320 (Colo.App.1997).

¶ 33 A court's authority under section 19–2–907 to combine sentencing options is qualified by the words "as appropriate." We presume the legislature intended meaning to be given to this qualifying language. *See A.S.,* ¶ 12 ("We do not presume the legislature used language idly, with no intent that meaning should be given to it."). This limitation on the court's ability to combine sentencing options must be read to allow the court to exercise considerable discretion in determining what sentence will best serve the juvenile's and society's best interests, while ensuring that any combination of sentences is consistent with the overall sentencing scheme.

¶ 34 Section 19–2–907 cannot, therefore, be read in isolation. Each sentencing option listed in section 19–2–907(1) references another statutory section of the Children's Code that further describes each sentence. These references require that each sentencing option be interpreted consistently and harmoniously with the specifically referenced statutes. *See A.S.,* ¶ 11. And, in exercising its discretion, the sentencing court may not depart from the statutory sentencing scheme to impose what it considers to be a more appropriate sentence. *Bassford,* ¶ 20.

¶ 35 Section 19–2–907(1)(a) references section 19–2–909, which in turn references section 19–2–921, and specifically describes a sentence of commitment to the Colorado Department of Human Services (CDHS).[2] Together, these statutes hold a juvenile accountable and create a comprehensive system for the evaluation, treatment, and supervision of those juveniles, including special offenders, who must be removed from their homes and are in need of secure, twenty-four hour treatment, structure, and/or supervision. A commitment to the DYC includes a juvenile's placement in the legal custody of the CDHS for physical placement in an institutional facility and a period of parole or extended parole. § 19–2–909(1)(a), (b); § 19–2–1002. In essence, a juvenile commitment to the DYC is, in many ways, analogous to an adult sentence under the Criminal Code to the Department of Corrections and is the most restrictive placement available to the court for a juvenile who is adjudicated delinquent and is less than eighteen years old at the time of sentencing. *See generally* §§ 18–1.3–104, –401, C.R.S. 2013; *S.G.W.,* 752 P.2d at 88 (recognizing that, "[a]lthough a delinquency proceeding is not a criminal prosecution, we must be mindful that the commitment of a juvenile to the [DYC] does implicate in a substantial way the liberty interests of the committed child," and holding that the rule of lenity is applicable to interpretation of delinquency statutes). A commitment to the DYC may be for a determinate term of two years or,

as relevant here, may require a mandatory minimum term of one year for special offenders. *See* § 19–2–908(1)(a).

■ ¶ 36 Generally, probation is an alternative sentence to commitment. *People v. Smith,* 2014 CO 10, ¶ 8, 318 P.3d 472 ("The legislature created these sentencing alternatives because incarceration and probation serve different purposes. A prison sentence is primarily punitive. By contrast, probation is intended to be rehabilitative." (citations omitted)); *see People v. Ledford,* 173 Colo. 194, 196, 477 P.2d 374, 375 (1970) ("[Probation's] basic purpose is to provide a program which offers an offender the opportunity to rehabilitate himself without confinement."); *People in Interest of B.L.M. v. B.L.M.,* 31 Colo.App. 106, 107, 500 P.2d 146, 147 (1972) (" '[Probation] suspends conditionally what might be a harsher judgment.' " (quoting *Holdren v. People,* 168 Colo. 474, 478, 452 P.2d 28, 30 (1969))).

■ ¶ 37 It is for the legislature, not the court, to prescribe punishment or sanctions for criminal or delinquent behavior, to determine whether a period of probation combined with a period of penal confinement is beneficial, and to define how any such policy will be implemented. *See R.W.V.,* 942 P.2d at 1320; *People v. Dist. Ct.,* 197 Colo. 481, 483, 593 P.2d 1372, 1374 (1979). The legislature has defined those circumstances when a juvenile delinquency commitment and probationary sentence may be appropriately combined. *See* § 19–2–925(1)(a).

■ ¶ 38 Sections 19–2–907 and 19–2–925(1)(b) may be read harmoniously with each other and the overall juvenile justice sentencing scheme when any combined sentence to commitment and probation limits the term of commitment to no more than forty-five days. *See* § 19–2–925(1)(a). If the offender is over eighteen years old and is granted release for education, job training, or employment, the aggregate commitment may be up to 180 days. § 19–2–925(1)(b).[3]

---

2. The DYC is a division of the CDHS. § 19–2–203, C.R.S.2013. The terms DYC and CDHS may sometimes be used interchangeably within the context of delinquency commitments.

3. We note that this forty-five day limitation is not applicable to any out-of-home placement through a county department of human services. *See* § 19–2–925(1)(a), C.R.S.2013.

¶ 39 Because J.S.R.'s sentence was a combined sentence of probation and commitment, and the period of commitment exceeded the forty-five day aggregate maximum, we conclude that the sentencing court exceeded its statutory sentencing authority, and the sentence imposed was illegal.

¶ 40 The district court found, and the People argue, an alternative basis for holding the combined sentence legal, which we choose to address in order to resolve a common point of confusion. *See People v. Harlan*, 8 P.3d 448, 470 (Colo.2000) ("We address this issue *sua sponte* to avoid perpetuating the confusion presented in this case."), *overruled on other grounds by People v. Miller*, 113 P.3d 743 (Colo.2005). The People argue that because the initial combined sentence to commitment and probation was imposed as one disposition, which, in the aggregate, was no more than two years in length, it was legal. However, the fact that the aggregate length of any combined sentence is no more than two years does not necessarily mean that the sentence is legal. The sentence imposed here is an example of the fallacy of that simple equation.

¶ 41 A probationary sentence is governed by the provisions of sections 19–2–913 and 19–2–925, and there is no specific probation term set by statute. Instead, the court is allowed to maintain supervision of the juvenile, monitor his progress, and modify the terms as frequently as it chooses. The only restriction on the length of probation is that a juvenile may not remain on probation for longer than two years if he is compliant with its terms. § 19–2925(3)(b) ("The court may release a juvenile from probation or modify the terms and conditions of his or her probation at any time, but any juvenile who has complied satisfactorily with the terms and conditions of his or her probation for a period of two years shall be released from probation, and the jurisdiction of the court shall be terminated.").

¶ 42 Section 19–2–909(1)(a) states that a court may not sentence a juvenile adjudicated as a mandatory sentence offender to an initial term of commitment that is greater than two years. The two-year maximum period of commitment is just that—a limitation on the term of commitment that the court may initially impose. The maximum period of commitment does not define the parameters of other individual or combined sentencing options listed in section 19–2–907, which are each governed by separate statutory provisions.

¶ 43 Limiting the length of a combined sentence does not make an otherwise unauthorized sentence legal. The legality of the sentence is instead determined by the cumulative legal effect of the sentence and whether it is authorized within the sentencing scheme established by the legislature. For the reasons stated above, the combined sentence imposed by the trial court was not authorized even though its aggregate length was no more than two years.

¶ 44 We also reject the People's contention that the court's probationary sentence simply deferred the date that J.S.R.'s probation term would be effective and that *People v. Trujillo*, 261 P.3d 485 (Colo.App.2010), authorizes the combined sentence. We agree with the analysis of the division in *Bassford*, and conclude that *Trujillo* is inapplicable here. *See Bassford*, ¶ 25. The probation and commitment terms were imposed on J.S.R. for one adjudication, not as in *Trujillo* where the two sentences were imposed for two separate cases.

¶ 45 In sum, section 19–2–907(1) does not authorize a court to impose separate, sequential terms of commitment and probation as a sentence for one delinquency adjudication, even if the aggregate length of the sentence does not exceed two years.

### 3. Application

¶ 46 It is undisputed that J.S.R. qualified as a special juvenile offender and was subject to a mandatory minimum one-year commitment or placement out of the home unless the court found an alternative sentence was more appropriate.[4]

---

4. We observe that J.S.R. qualifies as both a mandatory sentence and a repeat juvenile offender. *See* §§ 19–2–516(1) (a mandatory sentence offender is a juvenile who has either been twice adjudicated a juvenile delinquent, or has been adjudicated a juvenile delinquent and has had his

¶ 47 The sentencing court could only impose a sentence to commitment and probation if it limited the term of commitment to no more than forty-five days. It did not do so.

¶ 48 We recognize that the sentencing court did not specifically impose the term of commitment as a condition of probation, and instead ordered that the probation term be served after J.S.R.'s release from the DYC. Therein lies the problem. The court's sentence here effectively, and improperly, circumvented the legislative intent to limit the length of a combined sentence to commitment and probation. Parole supervision is meant to furnish the guidance that the court intended to provide for J.S.R. to successfully transition back into the community. *See* §§ 19–2–1002 to –1003, C.R.S.2013; *In the Interest of Miranda,* 2012 CO 69, ¶ 15, 289 P.3d 957 (parole is "an extension of one's confinement intended to aid the reintegration of criminals into society"); *People v. Norton,* 63 P.3d 339, 352 (Colo.2003) ("The purpose of mandatory parole is to rehabilitate and reintegrate an offender into a community."). The authority to combine various sentencing options listed under section 19–2–907(1) does not authorize the sentencing court, no matter how well intentioned, to combine sentences that are not authorized.

¶ 49 Having determined that the sentence imposed was illegal, we next turn to determining the proper remedy for this error.

#### 4. Remedy to Correct Illegal Sentence

¶ 50 The People, citing *Bassford,* ¶¶ 27–50, argue that the proper remedy to correct an illegal sentence is a remand to the district court for resentencing.

¶ 51 In this circumstance, lopping off the illegal probation term would be effective and easy, and would be our preference. However, it appears we are unable to do so because, under Colorado law, "[a]s long as any aspect of a sentence is inconsistent with

our statutory requirements, the complete sentence is illegal." *Delgado,* 105 P.3d at 637; *see Bassford,* ¶¶ 44–45. A remand for resentencing allows the sentencing court to correct the illegal sentence and appropriately fashion a legal sentence. *People v. Davis,* 2012 COA 56, ¶ 69, 296 P.3d 219 ("When a trial court 'misapprehends the scope of its discretion in imposing sentence, a remand is necessary for reconsideration of the sentence within the appropriate sentencing range.'" (quoting *People v. Linares–Guzman,* 195 P.3d 1130, 1137 (Colo.App.2008))).

¶ 52 However, any subsequent sentence imposed should not penalize the juvenile and increase the sentence that he has already served. *See Bassford,* ¶ 32 ("The portion of an illegal sentence which has been served cannot be ignored in instituting a valid sentence."); *People v. Cook,* 2014 COA 33, ¶¶ 24–27; *People v. Wieghard,* 743 P.2d 977, 979 (Colo.App.1987).

¶ 53 J.S.R. has already successfully completed his commitment to the DYC and his parole period was extended from six months to one year. Under these circumstances, if the district court were allowed on remand to choose from any of the sentences that it could have originally imposed, we can perceive of no new or additional sentence that would be authorized that would not also unduly prejudice J.S.R. Therefore, upon remand, we direct the district court not to impose any greater sentence than the one-year DYC commitment originally imposed. J.S.R. should be required to fulfill all of the terms of that original sentence, including the applicable period of parole authorized by statute.

#### III. Conclusion

¶ 54 We reverse the district court's denial of J.S.R.'s motion to correct an illegal sentence, and we vacate the sentence originally imposed. We remand the case to the district court with directions to resentence J.S.R. to

---

probation revoked and is then subsequently again adjudicated a juvenile delinquent or has his probation revoked), (2) (a repeat juvenile offender is a juvenile who has been adjudicated a juvenile delinquent and is subsequently adjudicated a delinquent for an act that constitutes a

felony or has his probation revoked for an act that constitutes a felony), C.R.S.2013. Because J.S.R. would have been subject to the same sentencing options as a mandatory sentence or a repeat offender, our analysis would be the same.

a determinate one-year mandatory minimum commitment to the DYC, nunc pro tunc to the original date of sentencing, and to correct the mittimus accordingly.

JUDGE J. JONES * and JUDGE NEY concur.